**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **DOMINIK RISCH**[1] | ) |
| | ) |
| | ) |
| _Plaintiff,_ | ) |
| | ) |
| **DANTE VENTURES CAPITAL, S.A**. | ) |
| | ) |
| _Plaintiff,_ | ) |
| | ) |
| **DALOA GROUP HOLDINGS LTD.** | ) |
| | ) |
| _Plaintiff._ | ) |
| | ) Case No. 1:25-cv-00393 |
| v. | ) |
| | ) |
| **LISA PALLUCONI, in her official capacity as** | ) **COMPLAINT FOR** |
| **Acting Director of the United States** | ) **DECLARATORY AND** |
| **Department of the Treasury,** | ) **INJUNCTIVE RELIEF** |
| **Office of Foreign Assets Control** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| _Defendant,_ | ) |
| | ) |
| and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
| | ) |
| _Defendant._ | ) |

_____

---

[1] Pursuant to Local Rule 5.1(c)(1), Plaintiffs are submitting a copy of this complaint that includes in the caption the full address of each party as a separate filing under seal.

Plaintiffs Dominik Risch, Dante Ventures Capital, S.A. ("DVC"), and Daloa Group Holdings Ltd. ("DGH") bring this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Lisa Palluconi, and in support of their complaint allege the following:

## **INTRODUCTION**

1.    This complaint arises from the United States Department of the Treasury's Office of Foreign Assets Control's ("OFAC") unreasonable delay in adjudicating five specific license applications, which seek to unblock the Plaintiffs' property interests in the United States, including financial accounts and real property.

2.    By way of background, on May 19, 2023, OFAC designated several entities and individuals pursuant to Executive Order ("E.O.") 14024. U.S. Dep't of the Treasury, *With Over 300 Sanctions, U.S. Targets Russia's Circumvention and Evasion, Military-Industrial Supply Chains, and Future Energy Revenues*, May 19, 2023, *available at*: https://home.treasury.gov/news/press-releases/jy1494. Relevant to this Complaint, those sanctioned parties include IGT Intergestions Trust Reg ("IGT") and Pascal Dominik Buechel (collectively, the "Blocked Parties").

3.    As a result of their E.O. 14024 designations, all property in which the Blocked Parties have an interest that comes within the U.S. or the possession or control of U.S. persons is blocked and cannot be transferred, paid, exported, withdrawn, or otherwise dealt in, absent an applicable license or statutory exemption. *Id*; Exec. Order No. 14024 § 1. Further, all blocked property must be reported to OFAC. 31 C.F.R. § 501.603.

4.     As described in further detail below, Plaintiffs maintain certain interests in a U.S.-based entity, real property, and financial accounts in the United States in which the Blocked Parties previously held an indirect interest. Accordingly, these property interests were blocked and reported to OFAC, and can only be unblocked if OFAC authorizes such unblocking.

5.     OFAC administers licensing procedures by which interested parties can apply to engage in otherwise prohibited transactions or seek to have property that has been blocked pursuant to its regulations unblocked. 31 C.F.R. § 501.801(b)(2).

6.     Pursuant to these procedures, Plaintiffs variably submitted five license applications to OFAC seeking the unblocking of blocked property and interests in blocked property. Plaintiffs explained that although, for a brief period of time, sanctioned parties previously maintained an indirect interest in the ownership structure of the respective blocked properties, those sanctioned parties' interests had been severed.

7.     These license applications were filed between October 11, 2023 and February 1, 2024. Furthermore, during the period that these applications have been pending, Plaintiffs have followed up numerous times with Defendant OFAC regarding the status of their applications and have submitted supplements emphasizing the urgency of adjudicating them. Despite these efforts, these licenses have been pending for over a year.

8.     While these license applications have been pending adjudication, Plaintiffs have continued to be denied access to their U.S.-based property interests, have accrued financial penalties, including late fees and interest payments, and have incurred legal liability as they are unable to pay relevant taxes and corporate registration fees, nor perform under their contractual obligations with respect to those properties. Further, the U.S.-based real property impacted by the blockings are unable to be maintained or properly insured leading to its potential damage and

degradation, and overall harm to the structures in which the properties are located, as well as to surrounding properties.

9.    Accordingly, Plaintiffs seek this Court's intervention to enjoin Defendants from refusing to process Plaintiffs' unblocking license requests or to compel Defendants to issue a determination as to Plaintiffs' pending requests.

## JURISDICTION AND VENUE

10.    This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11.    This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

12.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as the Defendants reside in this District.

## THE PARTIES

13.    Plaintiff Risch is a Liechtenstein national.

14.    Plaintiff DVC is registered in the British Virgin Islands ("BVI").

15.    Plaintiff DGH is registered in the BVI.

16.    Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes adding and removing persons from the SDN List consistent with E.O. 14024 and the

implementing regulations at 31 C.F.R. Part 587, the Russia Harmful Foreign Activities Sanctions Regulations ("RuHSR"). Further, this includes adjudicating specific license applications to unblock blocked property or to engage in otherwise prohibited transactions under its regulations. 31 C.F.R. § 501.801.

17.    Defendant Lisa Palluconi is the Acting Director of OFAC. In this role, Defendant Lisa Palluconi oversees and directs OFAC's operations, including adjudicating specific license requests. Defendant Lisa Palluconi is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A.    OFAC's Designation of Relevant Parties

18.    On May 19, 2023, OFAC designated several entities and individuals under E.O. 14024. U.S. Dep't of the Treasury, *With Over 300 Sanctions, U.S. Targets Russia's Circumvention and Evasion, Military-Industrial Supply Chains, and Future Energy Revenues*, May 19, 2023, *available at*: https://home.treasury.gov/news/press-releases/jy1494.

19.    Specifically, and in relevant part, OFAC designated IGT, a Liechtenstein trust company, pursuant to E.O. 14024. *Id*. Mr. Buechel was also designated the same day and under the same authority. *Id*.

20.    As a result of these designations, all property and interests in property of the Blocked Parties that are in the United States or in the possession or control of U.S. persons are blocked and must be reported to OFAC. *Id*; 31 C.F.R. § 501.603(a)(1).

### B.    Foreign Trust 1 and Foreign Trust 2

21.    Foreign Trust-1 ("FT-1") and Foreign Trust-2 ("FT-2") are two Liechtenstein trusts which own various entities, including U.S. Company-1 ("USC-1"), Dante Ventures Capital

("DVC"), Daloa Group Holdings ("DGH"), Foreign Entity-1 ("FE-1"), and Foreign Entity-2 ("FE-2").

22.     On May 19, 2023, Mr. Buechel and Plaintiff Risch were trustees in FT-1 and FT-2. Following Mr. Buechel's designation, property in the United States owned by FT-1 and FT-2 and in which Mr. Buechel had an indirect interest in his role as trustee was blocked.

23.     Immediately following his designation by OFAC on May 19, 2023, however, Mr. Buechel resigned as Trustee of FT-1 and FT-2.

**C.     The Blocking of USC-1 and its Property**

24.     USC-1 is a Delaware-registered entity owned 50% by FT-1 and 50% by FT-2.

25.     USC-1 maintains an account at a U.S.-based financial institution, Flagstar Bank, account number ending in ******5911.

26.     At the time USC-1's account with Flagstar was opened, two Liechtenstein foundations owned the entity: Foreign Foundation 1 ("FF-1") and Foreign Foundation-2 ("FF-2") (collectively the "Foreign Foundations"). At that time, IGT and Mr. Buechel were members on the Foreign Foundations' boards. In 2021, however, the Foreign Foundations transferred their ownership of USC-1 to FT-1 and FT-2.

27.     Further, USC-1's Corporate Director is Foreign Entity-3 ("FE-3"), an Anguillan entity. Mr. Buechel was, at the time of his designation, a director of FE-3 but resigned immediately following his designation.

28.     On May 25, 2023, Flagstar Bank blocked USC-1's account and transferred the funds into an internal escrow account due to Mr. Buechel's designation and because Flagstar Bank believed that IGT remained in USC-1's corporate structure due to IGT's membership on the boards of the Foreign Foundations. At the time of the blocking, CBG's account held in excess of $400,000.

29.    Flagstar Bank filed a blocked property report with OFAC regarding USC-1's account on May 30, 2023.

        i.    <u>Risch's Specific License, Case Number: RUSSIA-EO14024 -2023-1149304-1</u>

30.    As noted above, OFAC promulgates procedures by which parties can seek to engage in transactions that are prohibited under its regulations or seek to unblock property in which they have an interest that has been reported to OFAC as blocked. 31 C.F.R. § 501.801(b)(2).

31.    On October 11, 2023, Plaintiff Risch requested that OFAC issue specific license authorization to unblock USC-1 and its account at Flagstar Bank, account number ending in ******5911.

32.    Plaintiff Risch submitted the specific licensing request to unblock USC-1 and its account at Flagstar Bank because no sanctioned persons, including IGT and Mr. Buechel, owned or controlled the property, nor did any sanctioned parties have any interest in it.

33.    On March 4, 2024, OFAC informed Plaintiff Risch its application with Case Number RUSSIA-EO14024-2023-1149304-1.

34.    On April 9, 2024, Plaintiff Risch filed a supplement to his license application to provide information supporting his request for expedited processing. Specifically, Plaintiff Risch provided OFAC with: (1) a delinquent tax notice from the State of Delaware regarding outstanding taxes owed by USC-1; (2) a notice from the Pennsylvania Department of Revenue regarding USC-1's failure to file tax returns; (3) an overdue invoice from USC-1's registered agent; and (4) a past due invoice for accounting services provided to USC-1 before its blocking. Accordingly, Plaintiff Risch requested that OFAC issue the requested license authorization so USC-1 could meet its financial and regulatory obligations while avoiding additional penalties.

35.    On August 29, 2024, OFAC sought information in connection with the adjudication of Plaintiff Risch's specific license application. OFAC requested information related to (1) the relationship between FT-1 and FF-1; (2) the relationship between FT-2 and FF-2; (3) the complete trust settlement documents for FT-1; (3) the complete trust settlement documents for FT-2; and (4) whether Plaintiff Risch has an alternative source of funds to pay for the outstanding taxes and invoices owed as described in the April 9, 2024 supplement.

36.    On September 2, 2024, Plaintiff Risch filed a second supplement to his license application in support of his request that OFAC expedite its processing of his application. Plaintiff Risch attached notices from the Florida Department of Revenue regarding USC-1's failure to file a Florida corporate income tax return for Fiscal Year 2023 and from registered agents of the State of Delaware regarding USC-1's failure to pay its annual tax. Plaintiff Risch reiterated that he has previously requested that OFAC expedite its consideration of the licensing matter so that the harm to Plaintiff Risch arising from the blocking can be mitigated and USC-1 can comply with state and local laws, including the tax laws of those respective jurisdictions.

37.    Plaintiff Risch responded to OFAC's August 29, 2024 request on September 10, 2024, reiterating that the blocked person, Mr. Buechel, had been removed from the structure of FT-1 and FT-2. Thus, no sanctioned interest remained in the blocked property at issue. Further, the response noted that neither Plaintiff Risch nor USC-1 had an alternative source of funds to pay for the taxes and invoices described in his supplemental submissions.

38.    OFAC confirmed receipt of Plaintiff Risch's responses on September 10, 2024.

39.    On September 23, 2024, Plaintiff Risch filed a third supplement to his license request. This supplement was filed to further support his request for expedited processing. It included a Notice of Final Assessment from the Florida Department of Revenue by which the

Florida Department of Revenue provided notice that it is assessing a monetary penalty on USC-1 for its unresolved tax liability.

40.    Plaintiff Risch also informed OFAC via email on September 23, 2024, that this supplement was filed, reiterated the urgency of the license request, and requested that OFAC reach out should it have any further questions.

41.    OFAC responded on September 24, 2024, confirming receipt of the email.

42.    On November 20, 2024, Plaintiff Risch filed a fourth supplement to his licensing request. Plaintiff Risch attached a notice received on October 30, 2024, from the Florida Department of Revenue stating that USC-1 must respond within seven days or USC-1's account will be referred to a private debt collection agency for its unresolved tax liability. Further, the notice indicates that failure to resolve the tax liability immediately will result in revoking USC-1's sales and use tax certificates, filing a judgment lien against USC-1, or referring USC-1's account for possible criminal prosecution.

43.    Plaintiff Risch also informed OFAC via email that this supplement had been filed and reiterated his concern regarding USC-1's inability to meet its tax obligations due to its blocked status. Moreover, Plaintiff Risch noted his intent to supplement his licensing request with each tax notice he receives.

44.    OFAC responded on November 21, 2024, confirming receipt of the email and requesting Plaintiff Risch alert OFAC when supplemental submissions are filed.

45.    On November 22, 2024, Plaintiff Risch emailed OFAC requesting an update on this pending license application in light of the severity of the outstanding tax obligations.

46.     On November 22, 2024, OFAC responded that "depending on the case, there are some additional processes we need to go through, including submitting requests for information back to the applicant or having broader coordination within [the Treasury Department]."

47.     On January 3, 2025, Plaintiff Risch emailed OFAC to request an update on the pending license application, and informing OFAC that Plaintiff Risch was concerned that USC-1 could not comply with certain reporting requirements under the Corporate Transparency Act ("CTA") while the license application was still pending. In doing so, Plaintiff Risch requested OFAC to expedite the processing of the application.

48.     OFAC responded on January 6, 2025 stating that the license was in progress.

49.     At the time of this complaint, OFAC has not issued a determination on USC-1's specific license application in Case Number RUSSIA-EO14024-2023-1149304-1.

**D.      The Blocking of Dante Ventures Capital and its Property**

50.     DVC is wholly owned by FT-1, and DVC's Corporate Director is Foreign Entity-4 (FE-4), a BVI registered entity. At the time of his designation, Mr. Buechel was a Trustee of FT-1 and a Director of FE-4. Immediately following his designation, Mr. Buechel resigned from his position as Trustee of FT-1. Further, Mr. Buechel resigned from his position as a Director of FE-4 on May 19, 2023.

51.     DVC owns a U.S.-based real property at 25 Columbus Circle, Unit 6**, New York, NY 10019, reported as blocked to OFAC on October 26, 2023. DVC maintains a real estate management agreement with U.S. Company-2 ("USC-2") to manage the residential property.

52.     DVC reported the property as blocked to OFAC on October 26, 2023.

i. DVC's Specific License, Case Number: RUSSIA-EO14024-2023-1174236-1

53.    On December 9, 2023, Plaintiff DVC filed a request for specific license authorization requesting OFAC to authorize the unblocking of the real property located at 25 Columbus Circle, Unit 6**, New York, NY 10019. Further, the license authorization requested OFAC to unblock any other property or interest in property of Plaintiff DVC in the United States.

54.    In the alternative, should OFAC have not be in a position to unblock the property, Plaintiff DVC requested that OFAC authorize certain transactions related to the property, such as (1) allowing tenants to reside in the property; (2) engaging in transactions necessary to maintain and manage the property and receive payment for these transactions; (3) engaging in transactions necessary to comply with legal and tax obligations; and (4) allowing U.S. financial institutions to open or maintain a blocked account to receive payments from persons residing in the property.

55.    As noted in the application, since May 19, 2023, no designated or blocked persons, including Mr. Buechel, have been in Plaintiff DVC's ownership or control structure. Therefore, Plaintiff DVC requested that OFAC issue a specific license authorizing the unblocking of its property and interests in blocked property.

56.    On December 11, 2023, OFAC assigned Plaintiff DVC's licensing request Case Number RUSSIA-EO14024-2023-1174236-1.

57.    On April 9, 2024, Plaintiff DVC submitted a supplement to its specific licensing request to request expedited processing. Plaintiff DVC's supplement explained that the blocked property located at 25 Columbus Circle, Unit 6**, New York, NY 10019, urgently required maintenance, and Plaintiff DVC needed to pay for legal and tax obligations related to the property. Plaintiff DVC's supplement requested that OFAC issue a license as soon as possible or issue an

interim license authorization permitting transactions related to maintaining the property and ensuring that any legal or tax obligations in connection with the property are satisfied.

58.     Plaintiff DVC's supplement also noted that OFAC had previously issued similar maintenance licenses concerning blocked property in the United States in about a month, whereas Plaintiff DVC's application had been pending for nearly four months.

59.     On April 14, 2024, Plaintiff DVC submitted a second supplement to its specific licensing request to provide additional information supporting its request for expedited processing. Plaintiff DVC's second supplement explained that on April 10, 2024, it received an email from the General Manager of One Central Park Condominium for the property located at 25 Columbus Circle, Unit 6**, New York, New York 10019, stating that it owes nearly $40,000 in arrears. The General Manager further noted in that email that the Board for One Central Park Condominium will likely put a lien on the property unless Plaintiff DVC provides a date when the outstanding balance will be paid. Plaintiff DVC noted in its supplement that it can only pay the outstanding fees related to the property if OFAC issues a specific license authorizing such transactions or authorizes the unblocking of the property.

60.     On July 5, 2024, Plaintiff DVC submitted a third supplement to its specific licensing request to provide additional information for its request for expedited processing. Plaintiff DVC's supplement informed OFAC that the Board of Managers for the South Residential Tower of Time Warner Center Condominium had indicated their intent to file a lien against 25 Columbus Circle, Unit 6**, New York, NY 10019, and institute foreclosure proceedings against it. Further, Plaintiff DVC's third supplement to its licensing request informed OFAC that the Cincinnati Insurance Company had canceled the property's homeowner's insurance policy.

61.     On July 10, 2024, OFAC sent several questions related to DVC's application. Specifically, OFAC inquired (1) whether payments for the charges to 25 Columbus Circle, Unit 6**, New York, New York 10019 would be made by DVC or another entity; (2) whether payment of any premium(s) to reactivate the insurance coverage provided by the Cincinnati Insurance Company would be paid by DVC or another entity; and (3) what the source of funds would be for these transactions.

62.     Plaintiff DVC responded on August 2, 2024, and explained that its ultimate beneficial owner ("UBO"), a non-sanctioned, non-U.S. person, would pay for the apartment and insurance charges. Further, DVC's response indicated that DVC anticipated additional invoices for payments necessary to maintain the property, such as those required to meet tax obligations. As such, DVC requested that OFAC issue an interim license to engage in all transactions necessary to safety and legal compliance-related maintenance of the apartment. Plaintiff DVC also noted that unblocking the property would eliminate the need for any such interim license, and reiterated that no sanctioned interests remained with respect to DVC or the apartment.

63.     OFAC confirmed receipt of the response on August 2, 2024, and asked two additional follow-up questions. OFAC requested the name of the UBO responsible for covering the apartment and insurance charges. Further, OFAC inquired about the current status of the potential lien being placed on the property, as described in DVC's July 5, 2024 supplement, and whether there are any additional deadlines that OFAC should be aware of.

64.     Plaintiff DVC responded on August 5, 2024 stating that the person responsible for paying the charges may not be the UBO, but DVC proposed having FE-1 pay for the apartment and insurance charges. As FE-1 is a non-sanctioned person, the source of the funds to pay for these

charges would be from a non-blocked party. Plaintiff DVC reiterated that no sanctioned persons were in the ownership or control structure of DVC.

65.    Regarding OFAC's second question, Plaintiff DVC explained that it was unaware of whether a lien had been filed against the property, but that it had been in communication with the Board of Managers for the South Residential Tower of Time Warner Center Condominium's attorneys to inform them of their obligations under U.S. sanctions laws.

66.    On January 3, 2025, Plaintiff DVC emailed OFAC to request an update on the pending license application. Plaintiff DVC informed OFAC that Plaintiff DVC was concerned that it could not comply with certain reporting requirements under the CTA while the license application was still pending. Accordingly, Plaintiff DVC requested OFAC to expedite the processing of the application.

67.    OFAC responded on January 6, 2025 stating that the license was in progress.

68.    At the time of this complaint, OFAC has not issued a determination on Plaintiff DVC's specific license application in Case Number RUSSIA-EO14024-2023-1174236-1.

**E.    The Blocking of Daloa Group Holdings and its Property**

69.    DGH is wholly owned by FT-1, and its Corporate Director is FE-4. At the time of his designation, Mr. Buechel was a Trustee of FT-1 and a Director of FE-4. Immediately following his designation, Mr. Buechel resigned from his position as Trustee of FT-1. Mr. Buechel also resigned from his position as a Director of FE-4 on May 19, 2023.

70.    Through U.S. Company-3 (USC-3) a U.S.-based pass-through entity, DGH owns a tenant-in-common interest in 30020 Cabot Drive, Novi, Michigan 48377.

71.    U.S. Company-4 (USC-4), a U.S.-based entity manages the property.

72.     DGH also maintains an interest in a subaccount with USC-2 at J.P. Morgan Chase in New York. Further, DGH has received distributions from USC-4 into that subaccount amounting to $139,760.83 on July 20, 2023 and $139,760.83 on October 19, 2023.

73.     DGH reported the property as partially blocked to OFAC on October 26, 2023.

     i.   DGH's Specific License, Case Number: RUSSIA-EO14024-2023-1174237-1

74.     On December 8, 2023, Plaintiff DGH submitted a request for specific license authorization to OFAC seeking to unblock its tenant-in-common interest in real property located at 30020 Cabot Drive, Novi, Michigan 48377. Additionally, the license authorization requested that OFAC unblock USC-3 and any other property or interest in property of Plaintiff DGH or USC-3 in the United States.

75.     In the alternative, and should OFAC not be in a position to unblock the property, Plaintiff DGH requested that OFAC authorize certain transactions related to the property, such as (1) allowing the current tenants to continue residing in the property; (2) engaging in transactions necessary to maintain and manage the property and receive payment for these transactions; (3) engaging in transactions necessary to comply with legal and tax obligations; and (4) allowing U.S. financial institutions to open or maintain a blocked account to receive payments from persons residing in the property.

76.     As explained above, as there were no designated or blocked persons in Plaintiff DGH's ownership or control structure following Mr. Buechel's resignation on May 19, 2023, Plaintiff DGH requested that OFAC authorize the unblocking of Plaintiff DGH's property and interests in property in the U.S.

77.     On December 11, 2023, OFAC assigned the licensing request Case Number RUSSIA-EO14024-2023-1174237-1.

78.     On April 9, 2024, Plaintiff DGH submitted a supplement to its specific licensing request to support its request for expedited processing. Plaintiff DGH's supplement explained that it had received several notices from the Internal Revenue Service ("IRS") regarding past due taxes on the property. Plaintiff DGH's supplement further noted that these owed taxes would continue to accrue penalties so long as the taxes are unpaid. Thus, Plaintiff DGH requested that OFAC either unblock the property or authorize the provision of tax and legal services in connection with it so Plaintiff DGH can comply with its regulatory and legal obligations.

79.     On January 3, 2025, Plaintiff DGH requested an update from OFAC on the pending license application. In doing so, Plaintiff DGH informed OFAC that it was concerned that it could not comply with certain reporting requirements under the CTA while the license application was still pending. Plaintiff DGH thus requested OFAC to expedite the processing of the application.

80.     OFAC responded on January 6, 2025 stating that the license was in progress.

81.     At the time of this complaint, OFAC has not issued a determination on Plaintiff DGH's specific license application in Case Number RUSSIA-EO14024-2023-1174237-1.

**F.     The Blocking of FE-1 and its Property**

82.     FE-1 is a Seychelles-registered company. It is owned 100% by FT-1 and its registered address is 306 Victoria House, Victoria, Mahe, Seychelles.

83.     On May 19, 2023, FE-3, an Anguillan entity, served as FE-1's Corporate Director. In October 2020, IGT was replaced as the sole shareholder in FE-3. Further, FE-3 resigned as FE-1's Corporate Director on June 16, 2023, and was replaced by new Directors who are non-sanctioned, non-U.S. natural persons, one of whom is Plaintiff Risch.

84.     At the time of his designation, Mr. Buechel was a Trustee of FT-1. In addition, Plaintiff Risch served as one of the original Trustees of FT-1. FE-1 maintains at a non-U.S.

financial institution, Goldman Sachs Bank AG ("GSBZ"), Account #C***23. At the time of the account's opening, it was communicated to GSBZ that FE-3 was FE-1's Corporate Director, and that IGT was FE-3's sole shareholder.

85.     On June 12, 2023, GSBZ filed a blocked property report with OFAC regarding FE-1's account. As of July 31, 2023, the total value of the investments blocked in that account was in excess of  $1,000,000.

i.     Risch's Specific License, Case Number: RUSSIA-EO14024-2024-1201347-1

86.     On February 1, 2024, Plaintiff Risch submitted a request for specific license authorization to OFAC seeking to unblock property and interests in property reported as blocked by GSBZ. Plaintiff Risch requested unblocking FE-1's account because no sanctioned parties, including IGT and Mr. Buechel, had any interest in the account. Further, Plaintiff Risch also requested unblocking because GSBZ did not appear to be a U.S. person and should not have otherwise blocked the account.

87.     Plaintiff Risch's application was a resubmission of an earlier application, Case Number RUSSIA-EO14024-2023-1149306-1, submitted on November 10, 2023. OFAC had returned the application without action on December 11, 2023, because it could not locate a record of the funds described in the application as being blocked.

88.     On February 1, 2024, along with refiling the application, Plaintiff Risch notified OFAC via email that it had obtained and resubmitted the blocking report. Further, Plaintiff Risch requested OFAC to expedite its consideration of the application because of the delay arising from the resubmission due to OFAC's failure to locate the relevant blocking report.

89.     On March 3, 2024, one month after Plaintiff Risch's resubmitted application, Plaintiff communicated to OFAC, noting that he still had not received a case number. In further

support of Plaintiff Risch's expedited processing request, he shared that the entity's tax payments are due soon and cannot be paid until the account is unblocked.

90.     On March 5, 2024, OFAC assigned the licensing matter with Case Number RUSSIA-EO14024-2024-1201347-1.

91.     On January 3, 2025, Plaintiff Risch emailed OFAC to request an update on the pending license application. OFAC responded on January 6, 2025 stating that the license was in "Treasury Coordination."

92.     At the time of this complaint, OFAC has not issued a determination on Plaintiff Risch's specific license application in Case Number RUSSIA-EO14024-2024-1201347-1

**G.     The Blocking of FE-2 and its Property**

93.     FE-2 is a Seychelles-registered company. It is owned 100% by FT-2 and its registered address is 306 Victoria House, Victoria, Mahe, Seychelles.

94.     On May 19, 2023, FE-3, an Anguillan entity, served as FE-2's Corporate Director. In October 2020, IGT was replaced as the sole shareholder in FE-3. Further, FE-3 resigned as FE-2's Corporate Director on June 16, 2023, and was replaced by new Directors who are non-sanctioned, non-U.S. natural persons, one of whom is Plaintiff Risch.

95.     At the time of his designation, Mr. Buechel was a Trustee of FT-2. In addition, Plaintiff Risch served as one of the original Trustees of FT-2. FE-2 maintains at a non-U.S. financial institution, Goldman Sachs Bank AG ("GSBZ"), Account #C***24. At the time of the account's opening, it was communicated to GSBZ that FE-3 was FE-2's Corporate Director, and that IGT was FE-3's sole shareholder.

18

96.     On June 12, 2023, GSBZ filed a blocked property report with OFAC regarding FE-2's account. As of July 31, 2023, the total value of the investments blocked in that account was in excess of $3,500,000.

        i.    Risch's Specific License, Case Number: RUSSIA-EO14024-2024-1201346-1

97.     On February 1, 2024, Plaintiff Risch submitted a request for specific license authorization with OFAC seeking to unblock FE-2's property and interests in property blocked by GSBZ as no sanctioned parties, including IGT and Mr. Buechel, had an interest in the account at GSBZ. Further, Plaintiff Risch also requested to unblock the account because GSBZ did not appear to be a U.S. person and, therefore, should not have blocked the account.

98.     Notably, Plaintiff Risch's application was a resubmission of an earlier application filed on November 10, 2023, Case Number RUSSIA-EO14024-2023-1149307-1, which OFAC returned without action on December 11, 2023. OFAC returned the application without action because it could not locate a record of the funds described in the application as being blocked.

99.     On February 1, 2024, along with refiling the application, Plaintiff Risch notified OFAC that it had obtained the blocking report and resubmitted the license application. Further, Plaintiff Risch requested OFAC to expedite its consideration of the application because of the delay arising from the resubmission due to OFAC's failure to locate the relevant blocking report.

100.    OFAC replied on February 1, 2024, and indicated it would forward the information to the team assigned to Plaintiff Risch's case.

101.    On March 3, 2024, one month after Plaintiff Risch resubmitted the application, Plaintiff Risch communicated to OFAC that he still had not received a case number. In further support of his expedited processing request, Plaintiff Risch also shared that the entity's tax payments were due soon, and the fees could not be paid until the account was unblocked.

102.    On March 5, 2024, OFAC assigned the licensing matter with Case Number RUSSIA-EO14024-2024-1201346-1.

103.    On January 3, 2025, undersigned counsel emailed OFAC to request an update on the pending license application. OFAC responded on January 6, 2025 stating that the license was in progress.

104.    At the time of this complaint, OFAC has not issued a determination on Plaintiff Risch's specific license application in Case Number RUSSIA-EO14024-2024-1201346-1.

**F.    Harm Suffered by Plaintiffs**

105.    Defendant OFAC's delayed adjudication of Plaintiffs' applications has caused substantial harm to each Plaintiff professionally and financially.

106.    Specifically, Plaintiffs Risch, DVC, and DGH are unable to access property in which they maintain an interest that has been either unnecessarily blocked or continues to be unlawfully blocked despite having no sanctioned interest. This includes, for example, Plaintiff Risch's interest in financial accounts, as well as the interests of Plaintiff DVC and Plaintiff DGH in real property.

107.    With respect to Plaintiff Risch, he is unable to access the funds held at Flagstar Bank or GSBZ so long as the unlawful blocking continues.

108.    In addition, due to the blocked nature of the properties in question, Plaintiffs DGH and DVC cannot fulfill their tax or legal obligations in connection with entities or properties they own in the U.S. For instance, Plaintiff DGH is unable to remit the taxes owed to the IRS for the property located at 30020 Cabot Drive, Novi, Michigan. Furthermore, transactions essential for the maintenance and upkeep of this property cannot take place without specific license authorization or the unblocking of the property.

109.    Regarding Plaintiff DVC, it similarly cannot engage in the transactions necessary to maintain and manage the property at 25 Columbus Circle, Unit 6**, New York, New York. Furthermore, as previously mentioned, Plaintiff DVC received notice from the Board of Managers for the South Residential Tower of Time Warner Center Condominium, indicating its intent to file a lien against the property and initiate foreclosure proceedings against it. Additionally, Plaintiff DVC's insurance company has canceled the homeowner's insurance policy for the property. As a result, Plaintiff DVC risks losing its property to foreclosure, and continues to risk the property's value and condition due to the cancellation of its insurance policy.

110.    Plaintiffs' ongoing harm suffered is a direct result of Defendants' failure to adjudicate Plaintiffs' specific license applications.

## CAUSES OF ACTION

### COUNT I

### DEFENDANTS' FAILURE TO RENDER A DECISION ON CASE NUMBER RUSSIA-EO14024-2024-1201346-1 CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

111.    Plaintiff Risch re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

112.    The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

113.    Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

114.    Defendants' failure to render a decision on the February 1, 2024 specific license, Case Number RUSSIA-EO14024-2024-1201346-1, constitutes unreasonable delay under the

APA. Plaintiff Risch will continue to suffer the consequences of the unlawful blocking so long as Defendants persist in refusing to render a final decision regarding his application.

## COUNT II

### DEFENDANTS' FAILURE TO RENDER A DECISION ON CASE NUMBER RUSSIA-EO14024-2024-1201347-1 CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

115.    Plaintiff Risch re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

116.    The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

117.    Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

118.    Defendants' failure to render a decision on the February 1, 2024 specific license, Case Number RUSSIA-EO14024-2024-1201347-1, constitutes unreasonable delay under the APA. Plaintiff Risch will continue to suffer the consequences of the unlawful blocking so long as Defendants persist in refusing to render a final decision regarding his application.

## COUNT III

### DEFENDANTS' FAILURE TO RENDER A DECISION ON CASE NUMBER RUSSIA-EO14024-2023-1149304-1 CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

119.    Plaintiff Risch re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

120.    The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

121.    Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

122.    Defendants' failure to render a decision on the October 11, 2023 specific license, Case Number RUSSIA-EO14024-2023-1149304-1, constitutes unreasonable delay under the APA. Plaintiff Risch will continue to suffer the consequences of the unlawful blocking so long as Defendants persist in refusing to render a final decision regarding his application.

### COUNT IV

### DEFENDANTS' FAILURE TO RENDER A DECISION ON CASE NUMBER RUSSIA-EO14024-2023-1174236-1 CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

123.    Plaintiff DVC re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

124.    The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

125.    Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

126.    Defendants' failure to render a decision on the December 9, 2023 specific license, Case Number RUSSIA-EO14024-2023-1174236-1, constitutes unreasonable delay under the APA. Plaintiff DVC will continue to suffer the consequences of the unlawful blocking so long as Defendants persist in refusing to render a final decision regarding its application.

**COUNT V**

DEFENDANTS' FAILURE TO RENDER A DECISION ON CASE NUMBER RUSSIA-EO14024-2023-1174237-1 CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

127.    Plaintiff DGH re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

128.    The APA requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

129.    Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

130.    Defendants' failure to render a decision on the December 8, 2023 specific license, Case Number RUSSIA-EO14024-2023-1174237-1, constitutes unreasonable delay under the APA. Plaintiff DGH will continue to suffer the consequences of the unlawful blocking so long as Defendants persist in refusing to render a final decision regarding its application.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Declare Defendant OFAC's delay in adjudicating Plaintiff Risch's specific license, Case Number RUSSIA-EO14024-2024-1201346-1, unlawful under 5 U.S.C. § 555(b) and compel the Defendants to adjudicate the unlawfully delayed matter;

B.    Declare Defendant OFAC's delay in adjudicating Plaintiff Risch's specific license, Case Number RUSSIA-EO14024-2024-1201347-1, unlawful under 5 U.S.C. § 555(b) and compel the Defendants to adjudicate the unlawfully delayed matter;

C.      Declare Defendant OFAC's delay in adjudicating Plaintiff Risch's specific license, Case Number RUSSIA-EO14024-2023-1149304-1, unlawful under 5 U.S.C. § 555(b) and compel the Defendants to adjudicate the unlawfully delayed matter;

D.      Declare Defendant OFAC's delay in adjudicating Plaintiff DVC's specific license, Case Number RUSSIA-EO14024-2023-1174236-1, unlawful under 5 U.S.C. § 555(b) and compel the Defendants to adjudicate the unlawfully delayed matter;

E.      Declare Defendant OFAC's delay in adjudicating Plaintiff DGH's specific license, Case Number RUSSIA-EO14024-2023-1174237-1, unlawful under 5 U.S.C. § 555(b) and compel the Defendants to adjudicate the unlawfully delayed matter;

F.      Grant an award to Plaintiff's costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 et seq., and any other applicable provision of law; and

G.      Grant such other and further relief as the Court may deem just and proper.


Dated: February 10, 2025

                                        Respectfully submitted,

                                        /s/ Erich C. Ferrari
                                        Erich C. Ferrari, Esq.
                                        Ferrari & Associates
                                        1455 Pennsylvania Ave., NW
                                        Suite 400
                                        Washington, D.C. 20004
                                        Telephone: (202) 280-6370
                                        Fax: (877) 448-4885
                                        Email: ferrari@falawpc.com
                                        D.C. Bar No. 978253

                                        *Attorney for Plaintiffs*